LCLARENCE E. McMANUS, Judge.
Defendant appeals the lower court’s judgment regarding custody of the minor child, incidental matters, and the denial of a motion for new trial. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiff, Kenneth Hughes, and defendant, Teresa Taitón, had a relationship in 2000 during which the couple’s son, Brandon, was conceived. The couple did not marry. The record demonstrates that the couple has had a contentious relationship with allegations of verbal and physical abuse and that Mr. Hughes pressured Ms. Taitón to have an abortion even offering her money to do so. Several months before giving birth, Ms. Taitón stayed with her family in Mobile, Alabama. She returned to Jefferson Parish to have Bran *1100 don at Ochsner Hospital pursuant to her insurance coverage. Mr. Hughes opted not to be present when his son was born on October 22, 2000. Two days after being released from the hospital, Ms. Taitón and Brandon returned to Alabama to live with her family. Mr. Hughes thereafter disputed paternity and requested DNA testing. At one point, Ms. Taitón moved to Jefferson Parish so that Mr. Hughes could be a part of Brandon’s life. This attempt proved to be futile and stressful with Ms. Taitón | ¡¡developing bleeding ulcers. In October 2001, Ms. Taitón and Brandon again returned to Mobile so that she could have familial support to rear her son.
In November 2001, she instituted child support proceedings in Alabama state court. The same month, Mr. Hughes filed this suit for custody in the Twenty-Fourth Judicial District. The trial judge signed an ex parte order granting temporary joint custody to Mr. Hughes based on his assertion that the child lived exclusively in Jefferson Parish since birth. Ms. Taitón argued this allegation was false and that she received no notice of this order. In December 2001, Mr. Hughes filed an affidavit stating that Ms. Taitón refused to return Brandon to Jefferson Parish. The trial judge signed a second ex parte order this time giving sole custody to Mr. Hughes. Ms. Taitón asserted she received no notice of this order as well. A civil warrant was issued for the pick up and return of Brandon to Mr. Hughes in Jefferson Parish. A curator was appointed to represent Ms. Taitón in her absence but was not served. Ms. Taitón claims she was not served under the long arm statute. Mr. Hughes presented the Louisiana court orders to an Alabama judge seeking full faith and credit. Ms. Taitón retained counsel and filed exceptions. Her exception argued that La. R.S. 9:355.1 et seq. is inapplicable because there was no custody order in existence at the time she moved to Alabama with Brandon and requested the revocation of the previously issued ex parte orders. The trial court denied the exception and Ms. Taitón did not apply for supervisory writs. The trial judge appointed James Klein, Ph.D. to evaluate the parties and complete a report. Ms. Taitón requested a second evaluation and report which was completed by Eugenia Patru, MSW.
This matter proceeded to trial. On June 11, 2001, the trial court issued its judgment. The trial judge in pertinent part found that La. R.S. 9:355.1 and its sub-parts were applicable to this case; that Ms. Taitón failed to comply with La. R.S. 9:355. et seq., by failing to notify Mr. Hughes of her plans to relocate to ^Alabama with Brandon; ordered the child be returned to Jefferson Parish; designated Ms. Taitón as the primary domiciliary parent should she decide to relocate to Jefferson Parish and if not, Mr. Hughes would become the domiciliary parent; awarded joint custody to the parties; and assessed Eugenia Patru’s costs to Ms. Tai-tón.
On June 18, 2001 the trial judge recused himself. Ms. Taitón believed a “relationship” existed between Mr. Hughes and Judge LaDart. Additionally, the trial judge recognized two of the witness and acknowledged that he “knew” Mr. Hughes. Ms. Taitón filed a motion for new trial. After a hearing, Judge Robert Burns denied the motion for new trial finding the judgment issued in this case was not contrary to the law and evidence.
This appeal followed.

DISCUSSION

RECUSAL AND MOTION FOR NEW TRIAL
Ms. Taitón argues that Judge LaDart erred in failing to disclose a prior relationship with Mr. Hughes. Additionally, she argues that Judge Burns erred in *1101 denying her motion for new trial after Judge LaDart recused himself of his own volition. She cites Younce v. Pac. Gulf Marine, Inc., 02-1343 (La.10/08/02), 827 So.2d 1144, in support. The alleged relationship in this case arises from Mr. Hughes’ previous position as the Director of Budget and Research for the Jefferson Parish Council and Judge LaDart’s previous employment with the Jefferson Parish Attorney’s office and as an administrative hearing officer for Jefferson Parish. In Younce, the relationship at issue involved concurrent representation of the trial judge (in an election dispute) and the plaintiff in that case by the same attorney. The trial judge did not disclose the relationship and even denied defendant’s motion to recuse. The Louisiana Supreme Court held that the trial judge had a mandatory duty to disclose this relationship to the parties and granted the motion to | Rrecuse. The Supreme Court remanded the case to the trial court for re-allotment to a different division and a new trial. We find Younce to be distinguishable from this case. Ms. Taitón did not file a motion to recuse the trial judge until after the judgment decreeing 50/50 custody had been rendered. Plaintiffs counsel alluded in open court to the existence of some kind of connection between Mr. Hughes and the trial judge. However, a connection was never actually established. The trial judge admitted he “knew” Mr. Hughes. Our assessment of the record demonstrates that the alleged relationship is not the type requiring mandatory disclosure or recusal under La. C.C.P. Art. 151. Apparently, the recusal came after Judge LaDart recognized two witnesses in court. The case was then randomly re-allotted. Thereafter, Ms. Taitón filed a motion for new trial. After a hearing on the motion for new trial, Judge Robert Burns denied the motion for new trial stating that the judgment was not contrary to the law and evidence. We agree that the motion for new trial was properly denied.
EX PARTE ORDERS OF THE TRIAL COURT
Turning to the assignment of error regarding the issuance of ex parte orders, we note that La. C.C.P. art. 963 provides:
If the order applied for by written motion is one to which mover is clearly entitled without supporting proof, the court may grant the order ex parte and without hearing the adverse party.
If the order applied for by written motion is one to which the mover is not clearly entitled, or which requires supporting proof, the motion shall be served on and tried contradictorily with the adverse party.
The rule to show cause is a contradictory motion.
La. C.C.P. art. 3945 provides in pertinent part that:
A. The injunctive relief afforded either party to an action for divorce or other proceeding which includes a provision for the temporary custody of a minor child shall be governed by the additional provisions of this Article.
B. An ex parte order of temporary custody of a minor child shall not be granted unless:
|(i(l) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition.
(2) The applicant’s attorney certifies to the court, in writing, either:
(a) The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court.
*1102 (b) The reasons supporting Ms claim that notice should not be required.
C. An ex parte order of temporary custody shall:
(1) Expire by operation of law within fifteen days of signing of the order; however, the order may be extended for good cause shown at any time before its expiration for one period not exceeding ten days.
(2) Provide specific provisions for temporary visitation by the adverse party of not less than forty-eight hours during the fifteen-day period, unless the verified petition or supporting affidavit clearly demonstrates that immediate and irreparable injury will result to the child as a result of such visitation.
(3) Be endorsed with the date on which the ex parte order is signed and the date and hour of the rule to show cause.
D. The rule to show cause why the respondent should not be awarded the custody, joint custody, or visitation of the child shall be assigned for hearing not more than fifteen days after signing of the ex parte order of temporary custody.
E. Any ex parte order not in compliance with the provisions of this Article is not enforceable, and is null and void.
F. In the event an ex parte order of temporary custody is denied, the court shall specifically allocate between the parents the time which the child shall spend with each parent, unless immediate and irreparable injury will result to the child.
The first ex parte order complained of was issued on November 16, 2001 following Mr. Hughes’ filing of a petition for custody. It essentially awarded joint custody to both parties, provided for the immediate return of the child to Jefferson Parish and set a rule to show cause for December 7, 2001. On December 7, 2001, Mr. Hughes filed a motion for ex parte custody. The trial judge signed an order the 17same day essentially granting temporary sole custody to Mr. Hughes pending further orders of the court. The record reflects that on December 21, 2001, the parties appeared in court. Ms. Taitón was represented by counsel and brought her minor son to court. The trial judge rescinded the December 7, 2001 order granting temporary sole custody to Mr. Hughes. While issuance of these orders may not have been proper, we note that the second order was rescinded leaving a joint custody arrangement in place. We find any error that may have occurred to be harmless in light of the facts and circumstances in this case.
NOTICE
Ms. Taitón contends she received improper service/notice of the petition for custody. The record reflects that Ms. Tal-ton’s attorney accepted service in open court. Thus, we decline to address this assignment of error.
RELOCATION
We agree with the trial judge that La. R.S. 9:355.1 et seq. applies to the facts of this case. In order to relocate a child, the parent seeking relocation must show that relocation is in the best interest of the child. Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094. A trial court’s determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. Id. Ms. Taitón argues that statute is impermissibly vague. We disagree. The child was born in Jefferson Parish and Ms. Taitón sought to permanently move the child to Alabama. We do not believe Ms. Taitón demonstrated that relocation is in the child’s best *1103 interest. Accordingly, we see no error in the trial court’s ruling.
CUSTODY DETERMINATION
The next issue is whether the trial court erred in awarding joint custody to both parties. Mr. Hughes sought joint custody while Ms. Taitón expressed her preference for sole custody. Two experts gave reports in this case, Alan James IsKlein, Ph.D., and Eugenia Patru, MSW. Dr. Klein observed that relocation to Alabama would not afford Mr. Hughes the ability to have a normal relationship with Brandon. He recommended Mr. Hughes should see Brandon three to four times a week and that a change in domiciliary status would be ordered should Ms. Taitón not be willing to return to Jefferson Parish. He felt Ms. Taitón was more resistant to co-parenting than was Mr. Hughes and recommended that a clinician monitor the co-parenting relationship and help them with any difficulties. He noted Ms. Talton’s fear of Mr. Hughes and described him as pushy, controlling, forceful and overbearing. However, Dr. Klein stated that Mr. Hughes appeared “exceptionally motivated to having a relationship with his son.” He opined that neither parties’ parenting abilities were impaired by any psychological problems. Dr. Klein observed Brandon was developmentally normal. His report was essentially neutral, not recommending one parent over the other.
Ms. Patru’s report was more detailed than Dr. Klein’s. She described Ms. Tai-tón as self-centered, manipulative and evasive. She recommended Brandon live in Louisiana with his father, that he be responsible for major decisions regarding Brandon and that Ms. Taitón have visitation on alternate weekends. She suggested arrangements for pick-up and drop-off of the child as previous exchanges between the parties proved volatile. She also made suggestions for ways in which the parties could better communicate with one another.
In this case the trial court was presented with competing expert testimony. Despite these differing opinions, it is well accepted that the trier of fact is charged with the determination of what credibility it assigns to expert witnesses and then to decide which expert among those testifying that it finds more credible. Lasyone v. Kansas City Southern R.R., 00-2628 (La.4/3/01), 786 So.2d 682. Credibility determinations, including the evaluation of and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which should not be | fldisturbed on appeal in the absence of manifest error. Id. We note that Ms. Pa-tru’s report seems less than complimentary to Ms. Taitón, recommending she not be the domiciliary parent. Yet, the trial court named her the domiciliary parent if she chose to live in Louisiana. After reviewing the entire record, including both expert reports, we find no manifest error in the trial court’s determination regarding the joint custody award as it does not seem to contravene the best interests of the child.
EXPERT WITNESS FEES
Ms. Taitón asserts that the trial court improperly assessed the expert witness fees of Eugenia Patru to her. She notes that the trial court advised Mr. Hughes’ attorney he would be responsible for those fees. The record reflects that Ms. Taitón requested a second evaluator in this case and that the trial court merely warned Mr. Hughes’ attorney to “be mindful of who you call as witnesses in your case in chief.” Moreover, the trial judge stated that he would rather address the issue of costs at a later date. La. R.S. 9:331(A) provides:
A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause *1104 shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
In light of the fact that Ms. Taitón requested this report, we see no error in the trial court’s ruling assessing her with the costs.

CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.