WILLIAMS, J.
11 The defendant, Tammy Dunklin, appeals a judgment designating the plaintiff, Andrenov Dunklin, as the domiciliary parent of the parties’ minor children. The trial court awarded visitation to the defendant, who currently has physical custody of the children while the plaintiff is deployed overseas. For the following reasons, we affirm and remand for the rendering of a joint custody implementation order.
FACTS
Tammy and Andrenov Dunklin were active duty members in the United States Air Force when they married in April 1999. Two children, T.D. and A.D., were born of the marriage. In October 2005, the parties were stationed at Barksdale Air Force Base in Bossier City. In May 2008, Andrenov was deployed to Afghanistan and Tammy took care of the children during the seven months he was away.
In March 2009, the parties and their children traveled to a new assignment at a U.S. Air Force base in Turkey. Shortly after their arrival in Turkey, the parties physically separated. Tammy and the children remained in the house provided by the military and Andrenov moved into the base dormitory. At the time, Andre-nov alleged that Tammy had engaged in an affair with another individual. In April 2009, the parties signed a separation agreement designating Tammy as the custodial parent during the school year and giving physical custody of the children to Andrenov for the summer.
In August 2009, Tammy filed a complaint with the military alleging that An-drenov was inappropriately taking showers with their six-year-old ^daughter, T.D. In October 2009, following an investigation, the Air Force issued a report finding that Andrenov’s conduct did not meet the criteria to constitute child sexual maltreatment. While the family was in Turkey, T.D. began to have problems in school with math, reading and language development. A counselor recommended an Individualized Education Plan (“IEP”) to assist the child. At a school meeting, Andrenov initially refused to consent to these additional educational services, but eventually agreed to a trial period for the child. Tammy extended her tour of duty in Turkey so she would not be reassigned until the children completed the school year. She then requested a new assignment in Germany, where she believed good schools were available for the children. Andrenov de- *743 dined to take the same assignment as Tammy.
In 2010, when Andrenov and the children returned to Turkey from summer vacation, Tammy met them at the airport and demanded the children and their travel documents. After Andrenov refused to provide the documents, Tammy placed the children in her vehicle and then drove in front of his vehicle to prevent him from driving away. Eventually, she was persuaded to leave by a third party. In March 2011, the family left Turkey and returned to this country.
The plaintiff, Andrenov, filed a petition for divorce under LSA-C.C. art. 102, seeking joint custody of the children and spousal support from the defendant, Tammy. After a hearing in February 2010, the parties stipulated to an interim order awarding them alternating weeks of physical custody with the children. In March 2011, the district court entered a “Supplemental |sInterim Judgment” awarding domiciliary custody of A.D. to plaintiff and domiciliary custody of T.D. to defendant. Plaintiff was reassigned to Scott Air Force Base in Illinois and took A.D. with him.
After a trial in June 2011, the trial court issued oral reasons for judgment finding that both parties were equally capable of providing for the emotional and material needs of the children. However, the court expressed concern that the mother’s allegation of sexual abuse by the father, determined by the military to be unfounded, appeared to have been made to gain a legal advantage. The court found that because the mother was stationed overseas, it would be easier for her to travel from the foreign country to the United States for visitation, than for the father to travel to a foreign country. The court determined that awarding the father domiciliary custody was in the best interest of the children. The trial court rendered judgment granting joint custody to the parties and designating the father as the domiciliary parent of the children, subject to visitation by the mother. In addition, the judgment provided that in the event plaintiff was deployed for more than 30 days, the defendant would have physical custody of the minor children during the deployment. The defendant appeals the judgment.
On July 19, 2011, the district court sent notice of the appeal by certified mail to the plaintiffs attorney of record, Darius Henderson, who later filed a motion to withdraw as plaintiffs counsel along with copies of emails from the attorney notifying plaintiff that an appeal had been filed in this case and that a responsive brief was due by September 12, 2011. This court granted the motion to withdraw on August 19, 2011. The defendant |4filed her appellate brief, but plaintiff did not file his brief by the due date. Plaintiff then contacted this court in October 2011, seeking a stay of the proceedings under the Servicemem-bers Civil Relief Act, 50 App. U.S.C.A. Sec. 501, et seq. This court granted a 80-day stay to give the defendant an opportunity to respond. Dunklin v. Dunklin, 46,-885 (La.App.2d Cir.11/8/11). Pursuant to this court’s order, defendant filed a response opposing any further stay. Subsequently, we granted attorney Susan Seott’s motion to enroll as plaintiffs counsel. Dunklin v. Dunklin, 46,885 (La.App.2d Cir.12/2/11). Finding that the statutory stay provision was not applicable in this matter, this court denied plaintiffs request for stay, treated his request as a motion for an extension of time to file a brief and ordered him to file his brief by January 6, 2012. Dunklin v. Dunklin, 46,885 (La.App.2d Cir.12/16/11). Plaintiff timely filed his brief on that date.
DISCUSSION
The defendant contends the trial court erred in designating the plaintiff as *744 the domiciliary parent of the minor children. Defendant argues that the trial court incorrectly placed too much emphasis on her allegation of possible child abuse by the plaintiff and her current military assignment in Germany as reasons to deny her the domiciliary custody of the children.
The paramount consideration in any determination of child custody is the best interest of the child. LSA-C.C. art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731; Semmes v. Semmes, 45,006 (La.App.2d Cir.12/16/09), 27 So.3d 1024; Shivers v. Shivers, 44,596 (La.App.2d Cir.7/1/09), 16 So.3d 500. The court is to consider all relevant factors in ^determining the best interest of the child, including the capacity and disposition of each party to give the child affection, continue the education and provide for the material needs of the child; the length of time the child has lived in a stable environment and the permanence as a family unit of the existing or proposed custodial home; the mental and physical health and moral fitness of each party; the -willingness and ability of each party to facilitate and encourage a close relationship between the child and the other party; and the responsibility for the care of the child previously exercised by each party. LSA-C.C. art. 134.
The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in LSA-C.C. art. 134, but should decide each case on its own facts in light of those factors. Semmes, supra; Robert v. Robert, 44,528 (La.App.2d Cir.8/19/09), 17 So.3d 1050, writ denied, 2009-2036 (La.10/7/09), 19 So.3d 1. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Semmes, supra.
The trial court has vast discretion in deciding matters of child custody and visitation. Semmes, supra; Slaughter v. Slaughter, 44,056 (La.App.2d Cir.12/30/08), 1 So.3d 788; Gaskin v. Henry, 36,714 (La.App.2d Cir.10/23/02), 830 So.2d 471. Therefore, the trial court’s determination will not be disturbed on appeal, absent a clear showing of an abuse of discretion. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Semmes, supra; Slaughter, supra. As long as the trial court’s factual findings are reasonable in light of the record when reviewed in its entirety, the appellate court may | finot reverse even though convinced it would have weighed the evidence differently if acting as the trier of fact. Semmes, supra.
In the present case, Sandi Davis testified that she was a licensed professional counselor appointed by the court to interview the parties’ children. Davis stated that she interviewed the children in July 2010, when T.D. was seven years old and A.D. was age three. Davis testified that the children seemed happy, but that T.D. expressed sadness about her parents’ separation. Davis did not spend much time with A.D. because of his age. Davis testified that T.D. said no one had touched the “private areas” of her body, that she took baths by herself and that her parents washed her back because she could not reach. Davis asked T.D. if anyone outside the family ever spent the night at either parent’s home and T.D. said that her mother’s boyfriend once stayed with them in a hotel. Davis opined that T.D. did not seem coached to give particular answers, but the girl appeared hesitant to talk about the mother’s boyfriend.
The plaintiff, Andrenov Dunklin, testified that he was.a member of the U.S. Air Force assigned to Scott Air Force Base in Illinois. Plaintiff stated that during the marriage, he helped care for the children *745 by cooking meals and driving them to school and the park. Plaintiff testified that when he was deployed to Afghanistan from May to December 2008, he kept in contact with his family by telephone or the Internet with a Skype account. He acknowledged that defendant had cared for the children during his absence. Plaintiff stated that after the family moved to Turkey in March 2009, he became convinced that his wife was involved with another man 17and the parties separated. Plaintiff testified that after moving into a dormitory on the base, he continued to spend time with his children every afternoon. He stated that he was reprimanded by military authorities for placing a recording device in the defendant’s house without her knowledge. Plaintiff testified that he exercised physical custody of the children on alternating weeks as provided in the court’s interim order. He stated that in August 2009, he was informed by military authorities that defendant had accused him of taking showers with his daughter and possibly touching her inappropriately. Plaintiff testified that after an investigation by the Air Force, he was notified that a review board had determined that his conduct did not meet the criteria for child sexual maltreatment.
In addition, plaintiff stated that in February 2010, he and defendant were informed by T.D.’s school that she was having trouble with reading and math. Plaintiff testified that initially he did not agree to the IEP because he did not want T.D. to be labeled- as a “special needs” student. However, plaintiff stated that he agreed to the IEP process for a trial period and that T.D.’s school performance had improved during that time. Plaintiff testified that after defendant did not allow him to visit the children on Thanksgiving Day, he refused to let her visit the children on Christmas Day. He acknowledged that the children suffered as a re-suit of the parents’ failure to comply with the court’s order. Plaintiff described an incident that occurred in January 2011, during the parties’ trip to the United States for a court appearance. He stated that after their arrival at the airport in Baltimore, defendant said she was taking the children for the evening because she had | sbooked a flight with them early the next morning, even though plaintiffs custodial period did not end until the following afternoon. Plaintiff testified that after he refused to let defendant take the children, she began screaming at him, the children began crying and airport security responded to the scene. Plaintiff stated that he allowed the children to leave on the flight with defendant the next morning.
The defendant, Tammy Dunklin, testified that she was a member of the United States Air Force stationed in Germany. Defendant stated that she was very involved with the education of her children, that she attended all of their school events and that she had extended her tour of duty in Turkey so that T.D. could finish the school year. Defendant testified that in 2009, T.D.’s teacher said the child was having trouble in school and testing showed that T.D. was not performing at her grade level in reading and math. Defendant stated that she supported the school’s recommendation that an IEP would help T.D. with learning, but that plaintiff resisted at first. Under the IEP, T.D.’s math and reading scores had improved. Defendant asserted that plaintiff had not been very involved with the children’s education and that he did not know the names of them teachers. Defendant testified that she had been the primary caretaker of the children during the marriage; she was responsible for feeding and clothing the children and driving them to their activities.
*746 Regarding the incident at the airport in Baltimore, defendant stated that the parties had agreed that she would pay for the flight to the United States, that she had made flight reservations for the children for Friday Rmorning and that it would have been easier for her to take the children Thursday evening, but plaintiff refused. Defendant testified that her understanding of the court’s interim order was that the exchange of children would occur no later than 5:30 p.m. each Friday, but that plaintiff was very restrictive about the time and that she could not get the children on her Friday until 5:30 p.m. at the earliest. Defendant stated that she was very worried about A.D. after plaintiff took him to the United States, because she did not have plaintiffs new phone number and she was unable to talk with her son for more than two weeks.
In her appellate brief, the defendant argues that in denying her domiciliary custody, the trial court placed too much emphasis on her allegation that plaintiff abused their daughter and on her assignment to an air base in Germany. Although the trial court found the parties to be on an equal footing with regard to most of the applicable Article 134 factors, the trial court implicitly found that defendant’s unfounded allegation of child abuse by plaintiff indicated defendant’s unwillingness to encourage a close relationship between the children and plaintiff. Such a finding is within the court’s discretion. In considering the defendant’s duty in Germany among the other custody factors, the court could have reasonably found that residing in the United States with their father was in the best interest of the children because of the closer proximity to their extended family.
In addition, defendant contends the trial court should have given more weight to her role as primary caretaker of the children. However, the record shows that under the interim order of March 2010, each parent |inexercised physical custody of the minor children on alternate weeks. Then, in March 2011, a supplemental judgment designated the plaintiff as domiciliary parent of A.D. and the defendant as domiciliary parent of T.D. Thus, the trial court was able to weigh the evidence that the parties had shared physical custody of their children on a roughly equal basis for more than one year prior to trial.
The trial court heard the contradictory testimony and assessed the credibility of the parties. After reviewing the entire record, we cannot say the trial court abused its broad discretion in weighing the custody factors of Article 134. Consequently, the record supports the trial court’s finding that the designation of plaintiff as domiciliary parent is in the best interest of the minor children. Although we are concerned about the possible disruption to the children’s routine if the plaintiff is again deployed into combat, the custody judgment provides for that circumstance and the defendant can seek modification if the situation becomes deleterious to the children.
We note that LSA-R.S. 9:335(A)(1) provides that absent the showing of good cause, the trial court must render a joint custody implementation order when, as here, joint custody has been decreed. The implementation order shall allocate the legal authority of the parents and the time periods during which each parent shall have physical custody of the children to assure continuing contact with both parents. LSA-R.S. 9:335(A)(2). Here, the record does not contain the requisite implementation order. Accordingly, we shall remand this case to the trial court to establish a joint custody implementation order.
*747 I n CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed. This matter is remanded to the district court for the purpose of rendering a joint custody implementation order. Costs of this appeal are assessed to the appellant, Tammy Dunklin.
AFFIRMED AND REMANDED.