JUDE G. GRAVOIS, Judge.
1 /This is" an appeal by Teresa Taitón, defendant/appellant, from a judgment of the trial court modifying the physical custody plan of her minor child, Brandon Hughes, maintaining the child’s natural father, Kenneth Hughes, plaintiff/appellee, as the domiciliary parent, and holding Ms. Taitón in contempt of court for failing to make court-ordered child support payments. For the reasons' that follow, we affirm the trial court’s judgment.

FACTS AND PROCEDURAL HISTORY

Teresa Lynn Taitón bore a son, Brandon Kenneth Hughes, on October 22, 2000. Brandon’s natural father is Kenneth Wayne Hughes. . Ms. Taitón and Mr. Hughes never married. On November 16, 2001, Mr. Hughes filed a petition for custody of Brandon. Following a custody trial, judgment was rendered on January 25, 2005 awarding Mr. Hughes and Ms. Taitón joint custody of Brandon and naming Mr. Hughes as domiciliary parent.[1] The court ordered that the parties share 13equal visitation time with Brandon. Finally, the court appointed a specialized family law facilitator to help the parties resolve minor custody and visitation issues. On July 6,' 2006, the trial court rendered a Judgment memorializing a consent agreement by the parties that established a 50/50 visitation schedule between them with Brandon.
Meanwhile, on March 8, 2005, Mr. Hughes filed a rule to modify/reduce child support. By interim judgment of the domestic commissioner dated August 18, 2005, Ms. Taitón was ordered to pay Mr. Hughes $302.00 per month in child support. On November 16, 2005, the trial *12 court upheld the domestic commissioner’s interim judgment in part, but relieved Ms. Taitón of having to pay child support to Mr. Hughes for September and part of October, 2005. This Court affirmed this judgment on appeal.[2]
The record reflects that very contentious litigation over child support, custody, and visitation took place between the parities over the next several years. Numerous rules and motions were filed by both parties. Over the years, visitation remained relatively the same, with Brandon spending the majority of his time with Mr. Hughes during the school year, and with Ms. Taitón. during the summer months.
On June 20, 2007, Mr. Hughes filed a rule against Ms. Taitón to make past-due child support executory and for contempt, which rule was originally set for a hearing on July 25, 2007, but was continued without date by agreement of the parties.
On May 28, 2010, Ms. Taitón filed a motion to suspend child support payments, which the hearing officer denied on July 6, 2010. On July 29, 2010, Ms. Taitón filed a motion for reduction and recalculation of child support. On |4August 27, 2010, the hearing officer modified Ms. Talton’s child support obligation to $158.94 per month.
On August 5, 2011, Mr. Hughes filed a rule to modify visitation/access until completion of the custody evaluation, for a custody evaluation, and for modification of the visitation/access. In his rule, Mr. Hughes claimed that Ms. Taitón “continues to have mental health issues that impede her ability to parent Brandon,” referencing instances when she allegedly left Brandon unattended and lost Brandon. Because of Ms. Talton’s alleged unstable mental state, Mr. Hughes requested limited and supervised visitation until testing and a custody evaluation could be completed. He also attached a letter dated July 26, 2011 from Ms. Claire Hesse, who had previously been appointed custody evaluator in the case in July 2006, in which Ms. Hesse states that she was withdrawing because “the parties are still unable to reduce their level of conflict.” Ms. Hesse recommended that “a thorough custody evaluation be conducted as there are indications of mental health Issues present in one or both parents.”
On September 19, 2011, the domestic commissioner appointed Karen Houghtal-ing as the mental health professional for the case. Ms. Houghtaling was ordered to assist the Court by rendering an evaluation concerning visitation and the designation of a domiciliary parent. Also on September 19, 2011, the parties stipulated before the hearing officer that Ms. Houghtaling’s evaluation would be completed within sixty days. ■ ; .
On April 4, 2012, Mr. Hughes filed a motion to reset his previously filed rules to make past-due child support executory and for contempt, alleging that Ms. Taitón currently owed him over $27,000.00 in past-due child support. As noted above, these rules had originally been filed on June 20, 2007 and were originally set for a hearing on July 25, 2007. That hearing had been continued without date and had never been heard.
|fiOn May 3, 2012, Ms. Taitón filed a motion to change custody, for an increase of visitation, and for contempt and sanctions, claiming in her motion that her recent move to St. Tammany Parish where Brandon lived, as well as Mr. Hughes’. refusal to allow the woman re *13 siding with him to be evaluated, were changes in circumstances that justified a custody modification. She argued that it was in Brandon’s best interest for the parties to continue sharing joint custody and requested that she be named domiciliary parent. Alternatively, she requested that the parties be granted joint and shared custody with co-domiciliary status, that she be granted additional visitation time with Brandon, and that she and Mr. Hughes share a 50/50 co-parenting schedule. Finally, she moved that Mr. Hughes be held in contempt for failing to pay her attorney’s fees and court costs per the court’s order of March 21, 2012.
On May 17, 2012, the parties went before a hearing officer who recommended that Ms. Taitón be found in contempt because of her owing Mr. Hughes $26,975.56 in past-due child support for the period from March 5, 2005 to March 31, 2012.[3] The hearing officer also recommended that Ms. Taitón be allowed to purge herself of contempt by paying $5,000.00 to Mr. Hughes before the trial date before the district court judge, and by paying an additional $500.00 per month beginning on the 30th day after the payment of the $5,000.00. It was also recommended that she be sanctioned for failure to pay child support, and that Mr. Hughes be awarded $1,200.00 in attorney’s fees and $263.20 in court costs. Regarding custody, after noting the “intense animosity” between. the parties and that “this couple is totally unsuited for shared custody as them level of conflict is incredibly high, and remains so after six volumes of litigation,” the hearing officer recommended that,the May 7, 2012 custody report of Ms. Houghtaling, the custody evaluator, be adopted as the judgment of the court. The hearing officer did not | f,believe equal sharing of physical custody was possible because of the “friction between the parents.” On May 21, 2012, Ms. Taitón objected to the hearing officer’s recommendations and interim order.
Prior to the trial of the matter before the- district court judge, on February 5, 2013, Ms. Taitón filed an amended motion to change custody and visitation, claiming that since her original motion to change custody was filed on May 3, 2012, there had been a change in circumstances surrounding Brandon. She alleged that Mr. Hughes had inflicted corporal punishment upon'Brandon by hitting him with a belt and that Brandon was scared of his father. She contended that it was in Brandon’s best interest that she be named domiciliary parent. She . requested that Mr. Hughes submit to- psychological testing, and that his visitation with Brandon be supervised until the testing was completed.
On March 15, 2013, Mr. Hughes filed a motion to continue and re-set Ms. Talton’s purge date and to adopt the recommendation of the custody evaluator before the district court judge, arguing that the recommendations given in Ms. Houghtaling’s report be adopted by the court. He highlighted that Ms. Taitón had failed to meet with the parenting facilitator, did not ensure that Brandon properly took his “ADHD” medication,[4] arid continued to sleep in the same bed as Brandon after a recommendation against that practice by the facilitator.
On March 22, 2013, Ms. Taitón filed .a motion to change the visitation schedule, *14 requesting that the visitation schedule revert back to the schedule put into place in 2006.
On March 28, 2013, the parties stipulated before the hearing officer to various custody and visitation issues, pending the custody hearing already set before the district court judge.
|7On April 22, 2013, Ms. Taitón filed a motion to change visitation, especially for the summer of 2013, arguing that because she had moved back to Jefferson Parish, the visitation schedule should revert back to the former visitation schedule, which she alleges had been the same from 2006 to 2011. She also filed a rule for contempt, alleging that Mr. Hughes had taken Brandon on a weekend that was scheduled to be hers.
The hearing officer held a conference on Ms. Talton’s rules for contempt and to change visitation on May 13, 2013, and noted the following in his findings of feet: “This couple has been before the hearing officer numerous times-the [hearing officer] finds them to be amongst the most contentious parties ever encountered by the [hearing officer] in 33 years as a lawyer.” He recommended that a summer visitation schedule of alternating weeks “is in the best interest of the child so that he is not further exposed to the constant bickering of these parties.”
On June 11, 2013, the parties met with the district court judge regarding the visitation schedule and stipulated to certain parts of the visitation schedule, including all major holidays, the parents’ birthdays, and the Mondays and Fridays that Brandon is off from school. The district court then conducted an extensive hearing on the issues of visitation during the summer months and on weekends during the school year, Ms. Talton’s request for change of domiciliary parent, and Mr. Hughes’ rule for sanctions for failure of Ms. Taitón to pay past-due child support owed to Mr. Hughes.
On July 22, 2013, the trial judge rendered judgment ordering that the parties would continue to have joint custody of Brandon, and Mr. Hughes would continue to remain as domiciliary parent. The judgment further provided for alternating weekly visitation for the summer of 2013, and for alternating visitation every two weeks during the summer of 2014, and for alternating two-week visitation periods during the summers thereafter. This timely appeal by Ms. Taitón followed.

\ ASSIGNMENT OF ERROR NUMBER ONE

In her first assignment of error, Ms. Taitón contends that the trial court erred in limiting her time with Brandon without making a finding as to why doing so was in Brandon’s best interest. She argues that because the change in visitation created a change in physical custody, the court should have considered the best interest of Brandon, She also argues that Mr. Hughes failed to show that the change in visitation was in Brandon’s best interest because the court found that Brandon was doing fine under the visitation schedule they previously had in place.
On September 19, 2011, Ms. Houghtal-ing was appointed as the mental health professional for this case and was ordered to conduct a custody evaluation. After interviewing all parties, conducting home visits, and reviewing the reports previously produced by professionals in the case, Ms. Houghtaling submitted a report to the court on May 7, 2012. In her report, Ms. Houghtaling noted the long and continuous conflict between Mr. Hughes and Ms. Tai-tón which would have harmful effects on Brandon if it continued. She reported that Ms. Taitón had a history of non *15 compliance with school policies and parenting coordinators, and lacked understanding about the risks involved in leaving a child unattended. She also reported that Mr. Hughes had a history of being verbally angry and frustrated about Ms. Taitón in front of Brandon, but she noted that he did a “commendable job” considering the conflict, as he had provided financial, educational, and medical needs for Brandon. Ms. Houghtaling did not believe co-parenting was possible for these parents, since nothing had changed over the years. She highlighted a 2002 report of Dr. York, who noted that Brandon was doing well, but that if the parents continued conducting themselves the way they were, they would mostly likely cause harm to him.
After considering each custody factor set out in Louisiana Civil Code article 184, Ms. Houghtaling’s ultimate recommendation was that Ms. Taitón have ^Brandon on alternating weekends and on the Monday and Tuesday of alternating weeks for a six-month period. During that time, she would be monitored by a parenting facilitator and be required to complete the following child-care duties: get Brandon to school on time, complete all homework, and ensure that Brandon sleeps in his own bed. If she did not complete these duties, the overnight stays on Monday and Tuesday would transfer back to Mr. Hughes.
At the hearing before the district court, Ms. Houghtaling testified regarding her evaluation that she submitted to the court and all the parties on May 7, 2012, stating that it was her recommendation that Brandon be “with his dad during the school days and every other weekend with the parents.” This was based on her observations of “the family, the collaterals, the home visits, the child, the child/parent observations, and after I did all of that, I went and looked at background professionals that had had reports previous to me to validate or challenge what I had decided at that point. And then I plug it all into— before I do that, I plug it all into the 12 factors to see how it comes.” She testified that it was in the best interest of Brandon for the summer schedule to be alternating two-week periods with each parent. She also ■ testified that Mr. Hughes’ having been named domiciliary parent should not change, noting that, “Dad has taken responsibility for areas in the child’s life that are important, whether it’s education, or— he’s made good decisions, and he’s followed through on the responsibility that goes with those decisions.” Ms, Houghtal-ing’s report was accepted into evidence at the hearing.
Ms. Houghtaling also testified that she had-witnessed Mr. Hughes becoming verbally frustrated on one occasion when they were waiting for Ms. Taitón to arrive to pick-up Brandon so that Ms. Houghtaling could complete her home visit with Ms. Taitón and Brandon. According to Ms. Houghtaling, “sometimes, when a parent is trying to explain to the Court over and over and over again, and | ^professionals over and over and over again, it isn’t unusual for the parent to look frustrated, aggravated and sometimes verbally aggressive with their thoughts because they are frustrated.”
In conclusion,' Ms. Houghtaling’s ultimate recommendation to the trial court was for Brandon to remain with his father during the week and every other weekend during the school year, and that alternating two-week periods during the summer would be in Brandon’s best interest.
First, upon review, we find that Ms. Taitón did not follow through with the child-care duties recommended by Ms. Houghtaling. She testified that she never actually met with the parenting facilitator, Mr. Joe Blanco. She also testified that Brandon still occasionally slept in her bed. *16 Finally Mr. Hughes presented the court with Brandon’s school work which revealed that his .grades suffered when he stayed with Ms. Taitón.
The record reflects ongoing and constant disputes and bickering between the parties regarding custody and visitation. The domestic commissioner noted in his Interim Judgment of May 17, 2012 that these parties exhibited “intense animosity,” and that he did not believe equal sharing of physical custody was possible because of .“friction between the parents.” Further, Mr. Green, Ms. Talton’S flaneé, testified at the hearing that both parties could not put their anger aside -when they were around each other.
In his oral reasons for judgment, the trial judge noted that Brandon was relatively well adjusted, but also noted that the continued fighting between the parties in this matter was “ridiculous.” He stated that because the parties could not agree on what was in the best -interest of the child, he was then in the position to determine the best interest of the child.
On appeal, Ms. Taitón relies on the trial judge’s statement that Brandon was well adjusted despite the ongoing issues. Citing Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, writ denied, 96-1650 (La.10/25/96), 681 So.2d 365, she acknowledged that the court has held that it’s not an abuse, of discretion to limit a parent’s access to a child when the animosity between the parents affects the child. However, she argues that the trial judge in the instant ease mentioned that Brandon was well adjusted and thus not affected. However, the court in Hawthorne also noted that for joint custody to work, “each parent must be willing to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent. Where the parties’ testimony reveals that sufficient animosity and rancor exist between them, such that they cannot work together to the extent required in a joint custody .arrangement, the courts have awarded sole custody.” Id. at 6S0.[5]
A trial court’s ruling on a change of custody should only be disturbed if the reviewing court finds that the trial court abused its discretion in making the ruling. Montalvo v. Montalvo, 02-1303 (La.App. 3 Cir. 4/17/03), 854 So.2d 902, 906, citing, Hillman v. Davis, 02-685 (La.App. 3 Cir. 12/11/02), 834 So.2d 594, 598.
Upon review, we find that it is clearly apparent from the record that these parties have had significant "and continuing difficulty working together, and obviously, the longer this behavior and attitude of both parties continues,.the greater the effect it will ultimately have on Brandon. Considering the entire record of this matter, we find that the trial court did not abuse its discretion in changing the physical custody plan, and that the court’s decision to modify the physical custody plan was in Brandon’s best interest. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In her second assignment of error, Ms. Taitón argues that the trial court erred in allowing Mr. Hughes to remain domiciliary parent after failing to consider significant evidence presented concerning violent and erratic behavior allegedly exhibited by him. According to Ms. Taitón, the trial court erred when it did not state *17 any facts to support its ruling that Mr. Hughes should remain as domiciliary parent of Brandon. She argues that the court erred in not considering the best interest of the child and the custody factors listed in Louisiana Civil Code article 134. Also, her repeated motions for contempt filed against Mr. Hughes after he allegedly kept Brandon from her and his refusal to communicate effectively with her, when he left town with Brandon .show that it is unreasonable for him to- remain-, as domiciliary parent.
Louisiana Civil Code article 134 provides that the court shall consider all relevant factors in determining the best interests of the -child. This Article then lists twelve factors that the court may include in its determination.[6] A trial court does not have to make a mechanical evaluation of all the listed factors. Dunklin v. Dunklin, 46,885 (La.App. 2 Cir.2012), 86 So.3d 741. The court should consider the facts of the present case in light of those factors. The factors are a guide for the court and are non-exclusive. The weight of each factor is left to the discretion of the trial court. Id. See also, Semmes v. Semmes, 45,006 (La.App. 2 Cir. 12/16/09), 27 So.3d 1024; Penn v. Penn, 09-213 (La. App. 5 Cir. 10/27/09), 28 So.3d 304.
In Ms. Houghtaling’s May 7, 2012 report, she considered all the custody factors and then recommended that Mr. Hughes remain as domiciliary parent. In discussing the factors, she noted that Brandon depends on his father for his physical and emotional needs. The ability to provide material .needs was also superior in Mr. Hughes. Further, Ms. Houghtaling testified at the hearing that she believed one hundred- percent that it was best for Mr. Hughes to remain as Brandon’s domiciliary parent. She testified that he had taken responsibüity for important areas of Brandon’s life, like education, and that he had made good decisions and was responsible in following through with those decisions., She noted -in her report that Ms. Taitón loves , Brandon, but also noted that Mr, .Hughes has been able to provide a more stable home environment for Brandon.
Ms. Houghtaling did note in her report that Mr. Hughes, exhibited aggressive behavior, usually in reaction to Ms. Talton’s parenting. She testified further that she has seen Mr. Hughes become aggressive, but acknowledged that “sometimes when a *18 parent is trying to explain to the court over and over and over again it isn’t unusual for the parent to look frustrated, aggravated and sometimes verbally aggressive with their thoughts because they are frustrated.”
Considering all of the evidence presented to the trial court, we cannot say that the judge abused its discretion in maintaining Mr. Hughes as domiciliary parent. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE

Finally, Ms. Taitón argues that the trial court erred in giving Mr. Hughes an executory child support judgment and finding her in contempt for failure to pay support when Mr. Hughes had taken no steps to collect support for a period greater |uthan five years.[7] According to Ms. Taitón, Mr. Hughes filed a rule to make support executory in 2007, but continued it without date and only resurrected the rule in 2012 after he was held in contempt for custody. Also, she claims that her actions were not in willful violation of a court order and she should not be assessed ar-rearages, since she had to maintain a home for the child for fifty percent of the time and her income was significantly less than Mr. Hughes’.
As noted above, on June 20, 2007, Mr. Hughes filed a rule to make past-due child support executory and for contempt, which was ultimately continued without date. Then, on April 4, 2012, Mr. Hughes filed a motion to reset his rule. Ms. Taitón claims that Mr. Hughes’ failure to try to collect the outstanding child support payments for more than five years should have prevented her from being found in contempt. However, Ms. Taitón provides no support for this argument on appeal. Louisiana Civil Code article 3501.1 provides for a ten-year liberative prescriptive period on actions for arrearages of child support. Mr. Hughes’ action for arrearag-es was filed in 2007 and was continued until 2012. Ten years had not yet passed when Mr. Hughes originally filed his rule for past-due support. Therefore, the trial court did not err in ruling on Mr. Hughes’ rule for past-due support and for contempt.
Further, constructive contempt of court includes willful disobedience of any lawful judgment or order of the court. La. C.C.P. art. 224. Willful disobedience is defined as an act or failure to act that is done intentionally, knowingly and purposefully, without justification. The party seeking contempt must show that the alleged offender willfully disobeyed a direct order of the court prior to the contempt rule. Chauvin v. Chauvin, 46,365 (La.App. 2 Cir. 6/22/11), 69 So.3d 1192, 1197-98, citing Howard v. Oden, 44,191 (La.App. 2 Cir. 2/25/09), 5 So.3d 989; Baker v. Baker, 42,182 (La.App. 2 Cir. 6/20/07), 960 So.2d 1264; New v. New, 93-702 (La.App. 5 Cir. 1/25/94), 631 So.2d 1183.
A hearing before the domestic commissioner after Ms. Taitón filed a motion for reduction of child support on July 29, 2010 resulted in a reduction in her child support obligation. Since the record reflects that Ms. Taitón failed to pay the obligation, on April 4, 2012, Mr. Hughes filed a motion to reset his rule to make past-due child support executory and for contempt. The domestic commissioner found Ms. Taitón in contempt for owing $26,975.56 in past- *19 due child support. As part of the interim judgment, Ms. Taitón was allowed to purge herself of contempt by paying $5,000.00 before the trial. It was also recommended that she pay an additional $500.00 per month toward child support arrearages and be sanctioned for failure to pay child support. At the time of the hearing, Mr. Hughes testified that he had been paid nothing by Ms. Taitón. Ms. Taitón testified that it was difficult to make payments because she was in nursing school, and that she could pay some of the amount owed, yet she had not done so. Her child support obligation had previously been significantly reduced by the court; yet, she still did not make the payments. Upon review, we find that Ms. Taitón disobeyed a direct order of the court and thus the trial court did not abuse its discretion in finding her in contempt. This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court under review is affirmed.

AFFIRMED

. This case has been before this Court on appeal on two previous occasions. The opinion in first appeal was handed down prior to this judgment. For further procedural history, see Hughes v. Talton, 03-12 (La.App. 5 Cir. 4/29/03), 845 So.2d 1098, writ granted, 2003-1487 (La.6/27/2003), 847 So.2d 1274, rehearing granted (La.9/3/2003), 852 So.2d 1017.

. See, Hughes v. Talton, 06-319 (La.App. 5 Cir. 11/14/06), 947 So.2d 735, writ denied, 2006-2969 (La.2/16/07), 949 So.2d 420.

. The record reflects that Ms. Taitón actually owed Mr. Hughes $27,607.00 in child support. She was given a credit of $631.44, however, in court costs and attorney’s fees owed to her by Mr. Hughes.

. "ADHD” stands for Attention Deficit Hyperactive Disorder.

. See also Watermeier v. Watermeier, 504 So.2d 856 (La.1987); Ard v. Ard, 628 So.2d 1221 (La.App. 3 Cir. 1993); Goodwin v. Goodwin, 618 So.2d 579 (La.App. 2 Cir.1993), writ denied, 623 So.2d 1340 (La.1993); and Long v. Long, 458 So.2d 662 (La.App. 3 Cir.1984),

. Those factors are:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity. and disposition of each party to give the child love, affection,, and spiritual guidance and to continue the education and rearing of the child,
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment,
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable -preference of the child., if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a .close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility ■ for the care and rearing of the child previously exercised by each party.

. It does not appear from the record that the amount of past-due child support owed to Mr. Hughes as determined by the hearing officer was contested by Ms. Taitón. In her brief on appeal, she only argues that she should not have been held in contempt because no evidence was presented that her actions were in any way willful.