Judgment rendered January 13, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,649-CA
No. 53,650-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 53,649-CA

STEVEN R. KEENE
  Plaintiff-Appellant

versus

ASHLEY MICHAEL
HOLDSWORTH
  Defendant-Appellee

No. 53,650-CA

ASHLEY MICHAEL
HOLDSWORTH
  Plaintiff-Appellee

versus

STEVEN RAY KEENE
  Defendant-Appellant

* * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court Nos. 141,861 and 141,864

Honorable Edward Charles Jacobs, Judge

* * * * *

WALTER W. GERHARDT

H. LYNWOOD LAWRENCE, JR.

Counsel for Appellant,
Steven Ray Keene

Counsel for Appellee,
Ashley M. Holdsworth

* * * * *

Before GARRETT, STONE, and STEPHENS, JJ.

**STEPHENS, J.**

This is an appeal from the trial court's judgment finding the father, Steven R. Keene ("Steven"), to be in contempt of court for two separate violations of a 2015 custody and support judgment.[1] The trial court also ordered Steven to serve two 30-day jail sentences; the one for child support arrearages was to be purgeable upon Steven's payment of past-due support in the amount of $3,671.60, attorney fees in the amount of $6,500.00 to the mother, Ashley Michael Holdsworth Edmiston ("Ashley"), and all costs of the proceeding to date. Reconventional demands, including requests for modification of the parties' 2015 custody and support judgment[2] and the imposition of La. C.C.P. art. 863 sanctions and attorney fees filed by Steven, were also denied.

For the reasons set forth below, the contempt finding related to Steven's violation of the 2015 judgment's custody provision is affirmed, as is his 30-day sentence. However, the contempt finding based upon Steven's alleged child support arrearages as of the date of the filing of the rule and the penalties imposed thereon (30-day jail sentence, $6,500.00 attorney fee award, and payment of all court costs)[3] is reversed, as is the trial court's cursory rejection of Steven's claim for article 863 sanctions and attorney fees. We remand the matter to the trial court for a hearing as to the

---

[1] Excerpts of this judgment are included in this opinion as Appendix A.

[2] The trial court's denial of Steven's request to modify custody and support have not been assigned as error on appeal, and the facts and arguments of the parties and their attorneys related thereto will not be discussed or addressed herein except as required in our disposition of the issues raised in this appeal.

[3] That part of the trial court's judgment ordering Steven to pay Ashley $3,671.60, which represents, as calculated by the parties and accepted by the trial court, the amount due her from Steven as of the time of trial, has not been appealed and will not be disturbed.

appropriate sanctions for the article 863 violation by Ashley and for her attorney to present evidence (time sheets, billing statements, etc.) documenting the time he spent on the custody rule so the trial court can award him a reasonable fee associated therewith.

**FACTS AND PROCEDURAL BACKGROUND**

An eight-day trial was held in 2015 regarding custody of the parties' then 12-year-old son K.K. (d.o.b. 1/3/03). On November 19, 2015, the trial court rendered a judgment and interim order awarding the parties joint custody, with Ashley designated as domiciliary parent; the specific schedule of physical custody that the parties were to follow was set forth in this judgment. The November 2015 judgment also ordered Steven to pay child support in the amount of $869.15 per month, and the parties were each ordered to pay a designated percentage of K.K.'s uncovered medical expenses and tuition expenses at St. Mark's Cathedral School, where K.K. was to attend until he completed the eighth grade.

The custody schedule was followed until March 20, 2019, when K.K. told his mother that he would not be returning home but would be living with his father instead.[4] Thereafter, Steven failed to return K.K. to Ashley for a period of approximately three to four months; as of June 1, 2019, he also stopped the monthly Social Security payments Ashley had been receiving in lieu of monthly child support payments Steven was obligated to make.

---

[4] Prior to this, instead of filing a motion to modify custody, Steven had sent Ashley several letters expressing his desire that K.K. live with him and proposing a modification to the existing custody schedule. Ashley did not respond to the letters.

2

On July 1, 2019, Ashley filed a petition for contempt alleging Steven's failure to abide by the November 2015 judgment and seeking past-due child support, attorney fees and costs. On August 22, 2019, Steven filed an answer and reconventional demand seeking modification of the November 2015 custody judgment and an award of child support. He also asked the court to impose article 863(D) sanctions against Ashley for allegedly making intentionally false statements in her petition for contempt.

Following a one-day trial held on February 4, 2020, the trial court[5] denied Steven's reconventional demands and request for sanctions against Ashley. The trial court rendered judgment in open court that same day finding that Steven was in contempt of court for withholding K.K. from Ashley and sentencing him to 30 days in the parish jail. The trial judge further found that Steven was in contempt of court for failure to pay his portion of K.K.'s tuition, orthodontic and vision expenses in the amount $3,671.60 and sentenced him to an additional 30 days in the parish jail, consecutive to the other 30-day contempt sentence, with an opportunity for Steven to purge the second jail sentence upon his payment of $3,671.60, plus $6,500 in attorney fees, as well as all costs of the proceeding through the date of the filing of the judgment.[6]

Steven has appealed from this judgment.

---

[5] The same trial judge presided over both matters.

[6] Written judgment was read and signed in accordance with the judgment rendered in open court on February 27, 2020.

3

## DISCUSSION

### *Contempt Finding and Sentence-Custody Violation*

In his first assignment of error, Steven urges that the trial court erred in holding him in contempt for withholding K.K. from Ashley and in sentencing him to 30 days in jail.

Willful disobedience of any lawful judgment or order of the court constitutes a constructive contempt of court. La. C.C.P. art. 224(2). Willful disobedience is defined as an act or failure to act that is done intentionally, knowingly and purposefully, without justification. The party seeking contempt must show that the alleged offender willfully disobeyed a direct order of the court prior to the contempt rule. *Hanna v. Hanna*, 53,210 (La. App. 2 Cir. 11/20/19), 285 So. 3d 116; *Chauvin v. Chauvin*, 46,365 (La. App. 2 Cir. 6/22/11), 69 So. 3d 1192; *Howard v. Oden*, 44,191 (La. App. 2 Cir. 2/25/09), 5 So. 3d 989, *writ denied*, 2009-0965 (La. 6/26/09), 11 So. 3d 496; *Hughes v. Talton*, 14-17 (La. App. 5 Cir. 10/15/14), 181 So. 3d 10, *writ not considered*, 2014-2402 (La. 11/26/14), 152 So. 3d 895.

The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying the court's order, and its decision will only be reversed when the appellate court finds an abuse of that discretion. *Rockett v. Rockett,* 51,453 (La. App. 2 Cir. 6/21/17), 223 So. 3d 1227; *Chauvin, supra.*

Steven argues that while the facts are clear that he allowed K.K. to live with him in contravention of the November 2015 judgment, it is apparent that he did so with "ample justifiable excuse." Steven contends that the testimony shows that his son had given him a history of emotional abuse by his mother and stepfather, "very poor" treatment, and constant

4

belittling while at their house. Additionally, the testimony also shows his own safety concerns for K.K., such as the distance he would have to drive back and forth to school from the new home to which Ashley and her husband had recently moved.

According to Steven, while the evidence clearly established a problematic relationship between mother and son, Ashley refused to discuss anything with Steven and did not make any efforts to have K.K. returned to her until she did not receive the monthly Social Security payment (child support) on June 24, 2019. Only one week later, she filed her rule for contempt. Steven notes that during Ashley's testimony at the contempt hearing, she admitted that she never asked him to return K.K. to her after he went to Steven's house on March 20, 2019; she testified that her only communication with Steven between that date and June 24, 2019, was one text in May 2019 asking about the summer schedule. Steven argues that this was a tacit acknowledgment that Ashley did not object to K.K. living with him until she failed to receive the Social Security payment in June 2019.

Steven points out that, while questioning K.K., the judge decided that the teenager had a poor attitude, and asked, "Where did you get this attitude from?" K.K.'s response was, "Over five years of living with [Ashley]." In his oral reasons, the judge referred to K.K. as "having the maturity level probably of a seven- or an eight-year-old, maybe less," "a selfish, self-indulgent ingrate," "a spoiled brat," "a liar," and "a hundred and thirty pound little punk." Ignoring K.K.'s own testimony on this issue, at several times during the hearing and in his reasons, the judge blamed Steven for K.K.'s attitude. Steven also notes for this Court that the trial court questioned both him and K.K. extensively, yet chose not to ask any

questions of Ashley or her husband. Finally, the judge stated, during the hearing, that he had been reading his opinion from the parties' first custody trial in 2015; Steven notes that the court spent so much time talking about Steven's "demeanor" during that trial, it is possible that the court's ruling on this issue was based on evidence from ***that hearing*** as opposed to the testimony and evidence presented at the hearing on February 4, 2020.

On the other hand, Ashley argues that the evidence, particularly Steven's own testimony, supports the court's factual determinations that Steven, by failing to return K.K. to Ashley from the end of March 2019 until he was ordered to do so in November 2019, was in contempt of the court's November 2015 custody judgment, and that the 30-day sentence imposed by the court was not an abuse of discretion.

Ashley urges that if Steven had real concerns about the alleged "emotional abuse" K.K. suffered while in her custody, he would have sought relief from the trial court rather than simply letting K.K. stay with him in violation of the 2015 custody judgment. There is no evidence, other than his own self-serving testimony, that Steven "encouraged" K.K. to return home; instead, the evidence shows that Steven did nothing to ensure his return to Ashley. When Steven was asked by the trial court why he kept K.K. in spite of knowing about the 2015 judgment and its terms, he responded, "Well, I was really hoping that [Ashley] would take the action. She's the domiciliary parent." Ashley points out that she did—she filed the petition for contempt; however, Steven is not happy with the outcome.

The following is excerpted from the trial court's oral reasons for judgment:

[T]hey're asking that [Steven] be held in contempt for his failure to return the child pursuant to the judgment. . . . [W]hen I questioned [Steven] and I listened to the answers that he gave, . . . this might be what's wrong with the child. At no time, [Steven], did you grab that kid by the scruff of the neck, throw him in the back seat of the truck and say you're going back to your mother's. you know, if you want to live with me, so be it. I'll attempt to talk to your mother about it and if she disagrees, then we'll go talk to a lawyer and see what we can do. You allowed this child, see this is where this child gets this attitude, . . . to willfully violate a court order. You know, and this is where the child develops this attitude from. If that child, as you testified, refused to go back to the mother's house, you should've picked that child up, . . . you could have called the police yourself . . . [W]hen she filed her pleadings in [July] of 2019, it wasn't until November that, . . . [the parties went to court and K.K. was returned to his mother's custody]. You allowed that child, sixteen years old, to do whatever the hell he wanted because . . . I guess it fit your program. So I do find that you willfully violated the custody plan. You know, the reason we put these things in place is so we can have an ordered determination of custody so we don't have fifteen-, sixteen-, seventeen-year-old kids doing what they want to do because no matter what [K.K] thinks, he is not nearly mature enough to do that. . . . I am going to hold you in contempt for that and I'm going to order that you serve thirty days in the parish jail for that contempt.

As did the trial court, we find it disingenuous that Steven attempted to shift blame or responsibility to the parties' teenaged son for his own refusal to follow the court's custody judgment, and that rather than seeking redress through the court, he decided to wait for his ex-wife to do so. Steven admitted that while he knew that his failure to return K.K. was a violation of the court's orders, it was excused because it was a "technical" one. Although supported by reasons rather inartfully phrased, the trial court's determination that Steven purposefully, knowingly, and intentionally, without justification, disobeyed the trial court's custody order is not an

7

abuse of discretion and neither this finding, nor the 30-day jail sentence will be disturbed by this court.[7]

### Contempt Finding and Sentence -- Child Support and Expenses and Trial Court's Denial of Motion for La. C.C.P. art. 863 Sanctions

Because the facts and analysis of these two assignments of error are intertwined, they will be discussed and resolved together.

In his second assignment of error, Steven argues that the trial court erred in finding him to be in contempt of court for arrearages in the payment of his portion of tuition, orthodontic, and vision expenses and for ordering him to pay $6,500.00 in attorney fees to Ashley's counsel, in addition to sentencing him to an additional 30 days in jail, purgeable upon his payment of $3,671.60, the amount of allegedly past due expenses, $6,500.00 in attorney fees, and all court costs through the date of the filing of the trial court's judgment, February 4, 2020.[8]

Steven's third assignment of error is that the trial court erred in failing to assess La. C.C.P. art. 863(D) sanctions against Ashley for making intentionally false statements under oath in her contempt pleading. Specifically, he alleges she knew that her claims of arrearages in support and

---

[7] While the writer of this opinion would have not have conducted a colloquy with only one of the parties (and the child witness) or let his impressions from the previous "go-around" with these litigants affect his judicial temperament (as evidenced in the way he speaks about/to the party and child), he can understand the trial court's frustration in the instant matter. Nonetheless, judicial restraint is commendable, while the opposite can further the public's waning trust in the judiciary's ability to fairly and impartially decide the cases judges are called upon to decide.

[8] Steven has not assigned as error that part of the trial court's judgment ordering him to pay $3,671.60 to Ashley, as the amount that represents the difference between what he paid in child support/expenses before June 1, 2019, and what he owed at the time of trial, which includes child support arrearages accrued after the rule for contempt and Steven's share of K.K.'s LCP tuition, as shown in the trial exhibit (P-8) used by the parties and the trial court.

other expenses were false when she made them; this was proven by her own testimony at trial.

A parent alleging arrearages and unreimbursed expenses in a rule for contempt has the burden of proving the claims by a preponderance of the evidence. *Fobbs v. Fobbs*, 2009-219 (La. App. 3 Cir. 11/10/09), 25 So. 3d 168. The burden of proving a credit against the obligation is upon the parent claiming the credit. *Id.; Bourgeois v. Bourgeois*, 09-106 (La. App. 5 Cir. 6/23/09), 16 So. 3d 431.

The obligation imposed upon litigants and their counsel who sign a pleading is to make an objectively reasonable inquiry into the facts and the law. Subjective good faith will not satisfy the duty of reasonable inquiry. La. C.C.P. art. 863; *Miller v. Miller*, 35,358 (La. App. 2 Cir. 12/5/01), 803 So. 2d 292; *Diesel Driving Academy, Inc. v. Ferrier*, 563 So. 2d 898 (La. App. 2 Cir. 1990). The trial court's decision to grant or deny sanctions will not be reversed unless it is manifestly erroneous. *City of Ruston v. Perritt*, 30,896 (La. App. 2 Cir. 9/23/98), 718 So. 2d 1044.

In her contempt action filed on July 1, 2019, Ashley alleged that "there is ***currently due and owing*** [by Steven] the full sum of $20,860.08 in past due child support" as shown in the attached "Exhibit F," which reflects ***no support payment whatsoever*** by Steven from July 1, 2017 – June 1, 2019. Likewise, she alleged as "currently due and owing" by Steven: $927.29 for his portion of the 2016 St. Mark's school tuition; $927.29 for his portion of the 2017 St. Mark's school tuition; $2,0192.00 for his portion of orthodontic expenses; and, $330.49 for his portion of vision expenses. She asked the court to award her judgment in the amount of $25,237.17, plus any amounts that become due during the pendency of the proceedings.

Ashley further alleged that the parties made an extrajudicial agreement that K.K. would attend Loyola College Prep ("LCP") for high school, and that they would "split 50/50 tuition and costs." According to Ashley, Steven owed $1,570.00 for his share of February – June 2019.

In his answer and reconventional demand filed on August 22, 2019, Steven, *inter alia*, denied Ashley's claims that he was in arrears, alleged that the parties had an extrajudicial agreement regarding child support and Social Security payments regarding arrearages, and asked the trial court to sanction Ashley pursuant to La. C.C.P. art. 863 for "making intentionally false statements under oath in her pleading herein, specifically in paragraphs 17, 18, 19 and 18 [sic]" by ordering her to pay a reasonable attorney's fee and court costs.

The following is excerpted from the trial court's colloquy with counsel, which led into its oral reasons for judgment:

[Steven's Attorney]: Your Honor, . . . I just wanted to briefly make argument on one point before you rule on everything. We did include in our pleading a motion for sanctions which I think was proven on the record today. And in their pleading they, or I say they, [Ashley] claimed that [Steven] had paid no child support since July of 2017 and that he owed her twenty-five -- $26,000 knowing that was not a true statement because they had long before made the agreement with respect to the Social Security which has been testified to and which [Ashley has] confirmed on the record today. And in fact at the time that she filed that pleading she had an overage, [not] an arrearage.

The Court: Any response, [Ashley's Attorney]?

[Ashley's Attorney]: Yes, sir. And I didn't put on any testimony about this because I didn't think this was an issue. I can. [Ashley] always thought that the court order controlled. Any side agreement that they might make didn't count which I advised her that's not always true. . . . **I actually agree**

10

**that with what he's saying and – and that is that there was an overage, now there's an arrearage**. So I'm – I'm not, we weren't harping on that. I – I didn't put any evidence of that, but that's the explanation.

The Court: All right.

[Ashley's Attorney]: And that's why I didn't fight it and take up the Court's time and their time. . . .

The Court: . . . As far as the contempt –

[Ashley's Attorney]: Can I – could I address that issue just one time? I'm sorry to interrupt. The – the contempt issue.

The Court: Sure. Go ahead. No, that – that's what we're here for and I'll let [Steven's Attorney] respond.

[Ashley's Attorney]: Sure. [Steven's Attorney] said that when I filed there was an overage. Well, that's not true. If you just add up the orthodontics that's still owed, the two St. Mark's, there's not an overage. I netted them out. There was an overage on the monthly payment, but by the time you take all these other in, he still owes actually the number that he owes. So he was in contempt and there was not a – a net overage --.

The Court: Right. . . .

[Steven's Attorney]: That's not accurate.

The Court: Go ahead.

[Steven's Attorney]: **Because the – he came up with a total that [Steven] owes thirty-six hundred dollars considering everything net.**

The Court: Mmm-hmm.

[Steven's Attorney]: **But that included non-payment of child support of eight sixty-nine seventeen for a period of about six months after that. So the time this was filed –**

The Court: Correct.

[Steven's Attorney]: **He had an overage.  He did not have an arrearage**. . . . Here's what happened and this is what the testimony bore out earlier; in lieu of him paying her the eight sixty nine seventeen per month, they reached an extrajudicial agreement. . .[t]hat began December of 2016. . . by which he paid her the Social Security that he had obtained. . . [w]hich was more than that.  It ranged – between nine fifty eight to a thousand. [Steven] also for two months paid [Ashley] the child support also. . . . So when we get to and what [Ashley's Attorney's] chart showed which is put into evidence is that all of those payments and then including all of the things that they say he still owes for orthodontics or for private school tuition including all of that and taking into consideration that **after their filing** he . . . did not pay child support **it was after that that he did not pay the child support**.  He thought he still had plenty of overage for that until we got back to court.  Turns out he's about thirty-six hundred short. . . . **He had an overage at the time it was filed**.

The Court: Well be that as it may, . . . I don't agree with you that he "had an overage."  He was still behind in payment of certain aspects of the judgment. . .

[Steven's Attorney]: **He is behind today.  He wasn't behind at the time that this was filed six months, seven months ago**.

[The Court]: Why not?

[Steven's Attorney]: **Because in those last seven months he has not paid the eight sixty-nine seventeen**. . . .

[The Court]: . . . [H]e just willfully neglected to pay the child support, trying to take advantage of a willful violation of a custody plan. . . .

For the failure to pay the child support and the other matters, I am going to hold you in contempt for that and order that you serve another thirty days consecutive [to the 30 days imposed on the custody contempt finding] in the parish jail.  Somebody's going to learn here that they have to follow the rules.  However you can purge the second sentence, by paying [$3671.60 to Ashley, all costs of the

12

proceedings, and $6,500.00 in attorney fees to Ashley's attorney].

At the hearing, both parties testified that they had an extrajudicial agreement that provided for the monthly direct deposit of a portion of Steven's Social Security benefits to Ashley's account; his monthly child support obligation would first be credited, **with any additional amount "going toward" any other money that he owed her**, i.e., medical and tuition expenses. The Social Security deposits began in December 2016 and continued until stopped by Steven at the end of May 2019. Ashley's counsel introduced into evidence Exh. P-8,[9] a chart he discussed with both parties and which the trial judge used to come up with the figure currently due to Ashley from Steven. Both parties testified that, as of June 1, 2019, Steven had an **overage** of $4,943.24.

A child support judgment generally remains in full force until the party ordered to pay it has the judgment modified, reduced, or terminated. *Halcomb v. Halcomb*, 352 So. 2d 1013 (La. 1977); *Heflin v. Heflin*, 44,155 (La. App. 2 Cir. 1/14/09), 1 So. 3d 820. The parties may modify child support payments by conventional agreement if it does not interrupt the children's maintenance or upbringing and is in their best interests. *Dubroc v. Dubroc*, 388 So. 2d 377 (La. 1980); *Heflin, supra*. Clearly the parties did not have an agreement to modify or suspend Steven's child support payments in this case, which arguably would have been based on the fact that K.K. was living with Steven instead of his mother. As noted above, that "living arrangement" was a unilateral decision made by Steven, not one made by the court. Regarding his decision to redirect the Social Security

---

[9] Exhibit P-8 is included as Appendix B at the end of this opinion.

13

payments rather than seek relief from the court (Steven testified that he thought Ashley, as domiciliary parent, should be the one to file), Steven stated that he "stopped" making child support payments in June 2019 because "I assumed I had a credit there and that we needed to have this court case to figure out who owes who what."

As noted previously, Ashley, as the party seeking contempt, has to show that Steven, the alleged offender, willfully disobeyed an order of the court ***prior*** to the contempt rule. *Hanna, supra; Chauvin*, *supra*. ***At the time Ashley filed her rule for contempt***, Steven was not behind in his support obligations (including deductions from the overage amounts for the St. Mark's tuition and medical expenses, but not the LCP tuition, since Steven's responsibility for paying one-half of the LCP tuition arises not from the 2015 judgment, but from an extrajudicial agreement he and Ashley made after K.K.'s first year of public high school). Therefore, the trial court's contempt finding and 30-day jail sentence (including the award of attorney fees[10] and imposition of court costs), which was not properly based upon a finding that Steven, prior to the date that Ashley filed the instant rule, intentionally, knowingly and purposefully, or without justifiable cause, violated the court's judgment, will be reversed.[11]

On the issue of sanctions, what's sauce for the goose is sauce for the gander. Ashley's attorney contends that, at the time she signed her

---

[10] While we are reversing the attorney fee award in its entirety, we instruct the trial court, upon remand, to award Ashley's counsel a reasonable attorney's fee for his work associated with Steven's violation of the court's custody order. *See,* La. R.S. 9:375; La. R.S. 13:4611.

[11] We note that nothing precludes Ashley from filing another rule for contempt should Steven resort to self-help again and stop timely paying child support, keeping in mind that he should actually be in arrears prior to the date that a new contempt rule is filed.

14

verification, the allegations contained in the petition filed on July 1, 2019, were true and correct "to the best of her information, knowledge, and belief." This argument is specious at best; however, giving Ashley the benefit of the doubt, the argument that she did not know or should not have known of the falsity of the arrearages allegations could no longer be made once she failed to amend her rule for contempt prior to the hearing in February 2020.

First, she surely "discovered" that Steven was not over $20,000 in arrears once she began gathering information and documents for her attorney in preparation for the hearing; second, Ashley was reminded of the parties' agreement regarding the Social Security payments after being served with Steven's answer and reconventional demand, which was filed on August 22, 2019, and, *inter alia*, which specifically set forth the inaccuracies in the information she alleged in her rule. Instead, Ashley waited until the hearing, while being questioned by her attorney, to acknowledge that Steven was not in arrears in child support as she had alleged in her rule for contempt, but he actually had an overage of $4,943.24 as of June 1, 2019. We find that Ashley made a false certification in violation of La. C.C.P. art. 863 in her rule for contempt.

Once the court finds an article 863 violation, as we have since the trial court erred in not doing so, the imposition of sanctions is mandatory. La. C.C.P. art. 863(D); *Stegall v. Laborde,* 2015-306 (La. App. 3 Cir. 10/28/15), 177 So. 3d 374, *writ denied*, 2016-0019 (La. 3/4/16), 188 So. 3d 1062; *Mendonca v. Tidewater, Inc.*, 2011-0318 (La. App. 4 Cir. 9/7/11), 73 So. 3d 407, *writ denied*, 201-2333 (La. 12/2/11), 76 So. 3d 1179; *Mathis v. Mathis*, 2006-1589 (La. App. 4 Cir. 7/25/07), 964 So. 2d 426. Upon remand, the

15

trial court can, in its discretion, determine the type and severity of sanctions to impose. *See*, *Alpine Meadows, L.C. v. Winkler*, 49,490 (La. App. 2 Cir. 12/10/14), 154 So. 3d 747, *writ denied*, 2015-0292 (La. 4/24/15), 169 So. 3d 357; *Cloud v. Barnes*, 47,764 (La. App. 2 Cir. 4/17/13), 116 So. 3d 67, *writ denied*, 2013-1304 (La. 9/27/13), 122 So. 3d 1006. Subsection (D) of La. C.C.P. article 863 provides that an appropriate sanction may include an order to pay the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees. In determining the type of sanctions to be imposed, the court is to take into account the conduct that is being punished or sought to be deterred; the expenses or costs caused by the violation of the rule; whether the costs or the expenses are reasonable as opposed to self-imposed; and, whether the sanction is appropriate in order to achieve the purpose of the rule under which it is imposed. *Id.; Keaty v. Raspanti*, 2003-1080 (La. App. 4 Cir. 2/4/04), 866 So. 2d 1045, *writs denied*, 2004-0941, 2004-0947 (La. 6/18/04), 876 So. 2d 806, 807.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed in part; reversed in part; and, remanded with instructions.

AFFIRMED IN PART; REVERSED IN PART; and REMANDED WITH INSTRUCTIONS.

16

# A P P E N D I X   A

## Excerpts from the 2015 Judgment and Interim Orders

### Custody Provisions

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT STEVEN R. KEENE and ASHLEY M. HOLDSWORTH are hereby awarded the joint care, custody and control of the minor child, [K.K.], with ASHLEY M. HOLDSWORTH being designated as the domiciliary parent, subject to visitation periods as set forth hereinbelow:

> (a) During the school year, STEVEN R. KEENE shall exercise visitation with the minor child every other weekend from Friday at the time the child is released from school until Sunday at 6:00 p.m.; . . .

> (f) During the summer months of June, July and the first two (2) weeks of August, the parties shall alternate visitation with the minor child on a weekly basis, with the exchange being made on Sundays at 6:00 p.m.

### Child Support and Expenses Provisions

IT IS HEREBY ORDERED that STEVE R. KEENE shall pay unto ASHLEY M. HOLDSWORTH the sum of EIGHT HUNDRED SIXTY NINE AND 15/100 ($869.15) DOLLARS per month, as child support, for the maintenance and support of the minor child, [K.K.], retroactive to November 1, 2015, and continuing on the 1st day of each month, until further orders of the court. . . .

IT IS FURTHER ORDERED that ASHLEY M. HOLDSWORTH shall pay 27.98% of the St. Mark's tuition for the minor child each month and STEVEN R. KEENE shall pay 72.02% of the St. Mark's tuition for the minor child each month directly to the school, until further orders of the court.

IT IS FURTHER ORDERED that ASHLEY M. HOLDSWORTH shall pay 27.98% and STEVEN R. KEENE shall pay 72.02% of any and all outstanding sums due for medical, dental, orthodontic, opthalmolgic, or pharmaceutical expenses incurred on behalf of the minor child, [K.K.], not covered by insurance, including but not limited to, copayments, deductibles, prescription drug expenses, etc. Each party is to submit to the other party a copy of said bill or invoice whereupon said invoice is due thirty (30) days from the date of receipt.

# APPENDIX B

FILED IN EVIDENCE
The 4th day of Feb. A.D., 2020
In Suit No. 141816
By PLAINTIFF, and Marked " P8 "
_Debra Johnson_ Deputy Clerk

| | ssa | | cs | | overage | | |
|---|---|---|---|---|---|---|---|
| 12/1/2016 | $ | 958.00 | $ | 869.17 | $ | 958.00 | |
| 1/1/2017 | $ | 958.00 | $ | 869.17 | $ | 958.00 | |
| 2/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 3/17/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 4/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 5/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 6/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 7/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 8/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 9/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 10/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 11/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 12/1/2017 | $ | 958.00 | $ | 869.17 | $ | 88.83 | |
| 1/1/2018 | $ | 977.00 | $ | 869.17 | $ | 107.83 | |
| 2/1/2018 | $ | 977.00 | $ | 869.17 | $ | 107.83 | |
| 3/1/2018 | $ | 977.00 | $ | 869.17 | $ | 107.83 | |
| 4/1/2018 | $ | 982.00 | $ | 869.17 | $ | 112.83 | |
| 5/1/2018 | $ | 982.00 | $ | 869.17 | $ | 112.83 | |
| 6/1/2018 | $ | 982.00 | $ | 869.17 | $ | 112.83 | |
| 7/1/2018 | $ | 982.00 | $ | 869.17 | $ | 112.83 | |
| 8/1/2018 | $ | 982.00 | $ | 869.17 | $ | 112.83 | |
| 9/1/2018 | $ | 982.00 | $ | 869.17 | $ | 112.83 | |
| 10/1/2018 | $ | 982.00 | $ | 869.17 | $ | 112.83 | |
| 11/1/2018 | $ | 982.00 | $ | 869.17 | $ | 112.83 | |
| 12/1/2018 | $ | 982.00 | $ | 869.17 | $ | 112.83 | |
| 1/1/2019 | $ | 1,009.00 | $ | 869.17 | $ | 139.83 | |
| 2/1/2019 | $ | 1,009.00 | $ | 869.17 | $ | 139.83 | |
| 3/1/2019 | $ | 1,009.00 | $ | 869.17 | $ | 139.83 | |
| 4/1/2019 | $ | 1,015.00 | $ | 869.17 | $ | 145.83 | |
| 5/1/2019 | $ | 1,015.00 | $ | 869.17 | $ | 145.83 | |
| 6/1/2019 | | | $ | 869.17 | $ | 4,943.24 | overage |
| 7/1/2019 | | | $ | 869.17 | | | |
| 8/1/2019 | | | $ | 869.17 | | | |
| 9/1/2019 | | | $ | 869.17 | | | |
| 10/1/2019 | | | $ | 869.17 | | | |
| 11/1/2019 | | | $ | 869.17 | | | |
| 12/1/2019 | | | $ | 869.17 | | | |
| 1/1/2020 | | | $ | 869.17 | | | |
| 2/1/2020 | | | $ | 869.17 | | | |
| ssa | $ | 29,280.00 | $ | 29,551.78 | cs owed | | |
| overag | $ | 4,943.24 | $ | 927.29 | st marks | | |
| total | $ | 34,223.24 | $ | 927.29 | st marks | | |
| | | | $ | 2,192.00 | braces | | |
| | | | $ | 330.49 | glasses | | |
| | | | $ | 1,570.00 | loyola | | |
| | | | $ | 2,396.00 | loyola | | |
| | | | $ | 37,894.85 | | 3671.60 | owed to MH. |

P-8